UNITED STATES, Appellee

v.

Abdul K. ERBY, Airman Basic
U.S. Air Force, Appellant

No. 00-0550

Crim. App. No. 33282

---

United States Court of Appeals for the Armed Forces

Argued January 9, 2001

Decided May 2, 2001

GIERKE, J., delivered the opinion of the Court, in which
SULLIVAN, EFFRON, and BAKER, JJ., joined.  SULLIVAN, J., filed a
concurring opinion.  CRAWFORD, C.J., filed an opinion concurring
in part and dissenting in part.

Counsel

For Appellant:  Major Stephen P. Kelly (argued); Colonel James R.
    Wise and Lieutenant Colonel Timothy W. Murphy (on brief).

For Appellee:  Captain Suzanne Sumner (argued); Colonel Anthony
    P. Dattilo and Major Lance B. Sigmon (on brief); Lieutenant
    Colonel Ronald A. Rodgers.

Military Judge:  J. Jeremiah Mahoney

**This opinion is subject to editorial correction before publication.**

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of larceny of government currency, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921.  The adjudged and approved sentence provides for a bad-conduct discharge and confinement for 6 months.  The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issues:

I

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT ARTICLE 66(c), UCMJ, 10 USC § 866(c), DID NOT GIVE THE COURT AUTHORITY TO REVIEW APPELLANT'S ASSIGNED ERROR CONCERNING THE CRUEL AND UNUSUAL PUNISHMENT HE SUFFERED AT THE HANDS OF DYESS AIR FORCE BASE CONFINEMENT FACILITY GUARDS.

II

WHETHER APPELLANT WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT AND ARTICLE 55 OF THE UCMJ WHEN GUARDS AT THE MILITARY CONFINEMENT FACILITY REPEATEDLY MISTREATED HIM AND OTHER CONFINEES AND PLACED HIM IN FEAR FOR HIS PERSONAL SAFETY.

For the reasons set out below, we set aside the lower court's opinion and remand for further action.

## Factual Background

On June 25, 1996, a general court-martial at Kadena Air Force Base (AFB), Japan, convicted appellant of offenses unrelated to this appeal.  Appellant's approved sentence from the Kadena court-martial included confinement for 3 years.  He was confined at the Naval Consolidated Brig at Miramar, San Diego, California.

On April 7, 1998, a general court-martial at Dyess AFB, Texas, convicted appellant of the offenses listed above. At some time before his trial at Dyess AFB, appellant was transferred from Miramar to the Dyess AFB confinement facility. His treatment at Dyess AFB after his second court-martial is the basis for the granted issues.

Before the Court of Criminal Appeals, appellant asserted that when he first arrived at the Dyess confinement facility, he was forced to stand at attention for approximately 30 minutes while his escorts were given a tour of the facility. During his in-processing, his personal belongings were "dumped and inventoried." The guards continuously cursed at him and threatened him. He was forced to remove all his clothing and stand at attention for 30 minutes while the guards "screamed, cursed at, and ridiculed" him. He was addressed as "you little bitch."

Appellant asserted that during his first 72 hours of confinement, while in administrative segregation, guards cursed and screamed at him, called him "many humiliating names," and strewed his personal belongings "all over the area." He asserted that he was awakened at 5:00 a.m. and not allowed to sleep until 9:00 p.m., and that on one occasion he was forced to remake his bed "at least 10 times." Finally, appellant asserted that he and other prisoners were forced to perform personal services for inmate staff, forced to intimidate new inmates, subjected to "shortened meals and showers," subjected to "repeated comments of a highly embarrassing and sexually explicit nature," addressed as "bitch," and put in "fear that others would rape them." The

Government did not contest appellant's allegation regarding the fear of rape in its brief or at oral argument.

The court below stated that it was "appalled by the treatment alleged by this appellant." Unpub. op. at 2. However, it held that it had no authority to review appellant's complaint because the mistreatment was not a part of the approved sentence, nor was it raised in appellant's clemency request to the convening authority.

## Discussion

Appellant argues that the court below took an "unnecessarily restrictive" view of its authority under Article 66(c), UCMJ, 10 USC § 866(c), to adjudicate claims of cruel and unusual punishment. He asserts that the "sadistic conduct" of the guards at the Dyess AFB confinement facility "so offended contemporary standards of decency that there is no doubt . . . [he] was subjected to cruel and unusual punishment in violation of Article 55, UCMJ, and the Eighth Amendment." Final Brief at 5.

The Government makes a three-pronged argument. First, it argues the court below correctly concluded that it lacked jurisdiction to review appellant's claims. Second, it argues that, even if the court below had jurisdiction, appellant failed to exhaust his administrative remedies. Finally, it argues that appellant was not subjected to cruel and unusual punishment. Answer to Final Brief at 2.

This Court addressed the jurisdictional issue in United States v. White, No. 00-0002, ___ MJ ____ (2001). In White, we expressly held that "we have jurisdiction under Article 67(c) to determine on direct appeal if the adjudged and approved sentence

4

is being executed in a manner that offends the Eighth Amendment or Article 55." ___ MJ (7). We also held that our authority under Article 67(c) "includes authority to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials[.]" Id.

In addition to its duty and authority to review sentence appropriateness, a Court of Criminal Appeals also has the duty and authority under Article 66(c) to determine whether the sentence is correct "in law." This authority under Article 66(c) is virtually identical to our Court's authority to review the sentence under Article 67(c). Accordingly, we hold that the Court of Criminal Appeals erred when it concluded that it lacked authority to review appellant's claims.

In White, we found it unnecessary to remand the case to the Court of Criminal Appeals because the facts asserted, even if true, did not amount to a violation of Article 55 or the Eighth Amendment. Unlike White, we are unable to resolve this case on the basis of appellant's assertions.

In the first place, we cannot determine if appellant exhausted his administrative remedies. It appears that appellant may have arrived at Dyess AFB and undergone the initial in-processing and administrative segregation mentioned in his complaint before the court-martial convened. Appellant did not request relief from the military judge at his second court-martial. Appellate defense counsel informed this Court at oral argument that appellant did not tell his defense counsel about the conditions of his confinement. Appellant states that he complained to a chaplain, the confinement facility

superintendent, and his Congressman. The record does not reflect whether the facility commander or the convening authority was aware of appellant's complaints. The record also does not reflect whether appellant filed a complaint under Article 138, UCMJ, 10 USC § 938, or the prisoner-grievance system. We cannot determine on this record whether any of these factors, individually or in conjunction with other evidence, provides a basis for deciding whether appellant exhausted available remedies.

In White, we found it unnecessary to determine if the appellant exhausted his administrative remedies because the alleged mistreatment did not amount to a violation of Article 55 or the Eighth Amendment. See also United States v. Sanchez, 53 MJ 393 (2000) (verbal sexual harassment did not rise to level of cruel and unusual punishment). We cannot make that determination in this case without further clarification of appellant's complaints. For example, appellant states, "We were also subjected to shortened meals and showers," suggesting that some inmates may have been deprived of food and basic hygienic needs, but he provides no details and does not specifically claim that he was deprived of food or hygienic needs. Appellant also asserts that the guards "made people fear that others would rape them," but he does not state whether he was threatened with rape or whether he was forced to threaten other inmates with rape. In its brief and at oral argument, the Government did not contest appellant's allegations. Government counsel conceded at oral argument that appellant's allegation regarding threats of rape was susceptible of different interpretations, and it conceded

that further factfinding might be necessary to determine if appellant's fear of rape was only a generalized fear of rape or the result of a specific threat by a guard or another prisoner.

We cannot determine on this record whether appellant's mistreatment rose to the level of a violation of the Eighth Amendment or Article 55. Further factfinding is necessary to determine if appellant's fear of rape was merely the sort of generalized fear that might prevail at any confinement facility, if the fear of rape resulted from specific threats by the guards or other prisoners to rape appellant, or if the guards were deliberately indifferent to threats of rape or attempted rape among the confinees.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals. That court will conduct whatever factfinding is required, including a hearing in accordance with United States v. Ginn, 47 MJ 236 (1997), if necessary. It will determine whether appellant satisfied the requirement to exhaust his administrative remedies, review the merits of appellant's claims under Article 66(c), and determine what relief, if any, is appropriate. Thereafter, Article 67 will apply.

United States v. Erby, 00-0550/AF


SULLIVAN, Judge (concurring):


I am heartened that this Court has finally held in this case and more recently in United States v. White, No. 00-0002, ___ MJ ___ (2001), that the lower courts have the duty and the jurisdiction to review whether the sentence imposed by a court-martial is being unlawfully increased by prison officials.  I have for some time believed this to be true.  United States v. Sanchez, 53 MJ 393, 397 (2000) (Sullivan, J., dissenting).

United States v. Erby, No. 00-0550/AF

CRAWFORD, Chief Judge (concurring in part and dissenting in part):

I am concerned with cruel and unusual punishment and the failure to prevent it. Like the majority, I agree that this Court has jurisdiction to examine allegations of cruel and unusual punishment in violation of Article 55 when a case is on direct appeal as to the adjudged and approved sentence. However, I cannot concur with the majority insofar as they shift the burden of proof to the Government to disprove an alleged Article 55 violation, instead of placing the burden where it should be, on the party who has allegedly been wronged.

As the majority notes, appellant was no stranger to the military justice system or incarceration.[*] On November 2, 1997, 5 months prior to appellant's second general court-martial on April 7, 1998, he was moved from confinement in San Diego and entered confinement at Dyess Air Force Base, Texas. Although appellant's affidavit is unclear, a fair reading of that document, in conjunction with appellate defense counsel's pleadings and oral argument, indicates that the majority, if not all, of the alleged aberrant behavior on the part of Dyess prison guards ensued immediately following appellant's arrival at Dyess Air Force Base.

---

[*] On June 25, 1996, appellant was convicted of 5 specifications of larceny and 10 specifications of falsely altering official documents to divert government funds into his personal bank account.

During extenuation and mitigation at his April 7, 1998, court-martial, appellant made no mention of the treatment which he had received at the hands of the Dyess Air Force Base guards for 5 months. After the introduction of 35 different exhibits, appellant's mother testified on his behalf. Appellant followed this with an unsworn statement that he read to the Court. In particular, appellant informed the military judge of his past court-martial and its associated sentence. Notably, he said that regarding the Joint Forces Brig, Camp Hanson, Okinawa, Japan, where he was confined after his first court-martial, "The Marines are in charge of this brig, and the time I spent there was very hard."

After 5 months in the brig at Okinawa, he was transferred to the Naval Consolidated Brig at Miramar. Appellant related how he had rehabilitated himself while serving confinement at Miramar, and that he had been granted parole and was due to be released on January 6, 1998. However, before that happened, he was transferred back to Dyess and had his parole revoked. With some bitterness, he informed the judge that "[a]fter all the hard work and dedication to rehabilitate myself and get ... parole, I lost it," just to be court-martialed once again for charges that were known of and "could have been taken care of way back when I was originally charged and sentenced."

United States v. Erby, No. 00-0550/AF

Although, as the majority notes, the record is unclear as to when the alleged degrading conduct occurred, I am convinced that any such maltreatment occurred prior to appellant's April 7, 1998, court-martial. By failing to raise this issue of constitutional proportion at trial, or even in his submission under RCM 1105, Manual for Courts-Martial, United States (2000 ed.), prior to the convening authority's action on June 22, 1998, appellant has forfeited his right to complain in this Court. See generally, New York v. Hill, 528 U.S. 110 (2000); Stewart v. LaGrand, 526 U.S. 115 (1999); cf. United States v. Scalarone, 54 MJ 114, 119 (2000)(Crawford, C.J., dissenting).

Remanding this case for a factfinding hearing under United States v. DuBay, 17 USCMA 147, 37 CMR 411 (1967), perpetuates the ad hoc remedy approach to these type of issues instead of requiring an institutional or systemic remedy. Although he introduced 35 exhibits at his court-martial, appellant did not introduce one shred of documentary evidence that he had complained to any of the parties he said he did and it was these parties who could have rectified mistreatment by the guards. Furthermore, appellant's affidavit does not name any of the individuals to whom he allegedly complained. As we have said on a number of occasions, a person who requests relief from this Court as a result of having suffered cruel and unusual punishment must demonstrate an exhaustion of administrative remedies before seeking judicial intervention. United States v.

3

Avila, 53 MJ 99, 101 n.1 (2000); United States v. Miller, 46 MJ 248, 250 (1997).

Certainly, appellant was aware of his ability to complain to the Inspector General, since he referenced an Inspector General report in his request for clemency after his first general court-martial.  An examination of the exhibits appellant submitted at his April 7, 1998, court-martial reinforces my belief that he was well familiar with the prisoner-grievance system and how to properly report and abate the misconduct of which he complains.

The burden of persuasion should be on the party with knowledge of the abuse and the ability to show the administrative actions taken to counter that abuse.  That burden could have been met in this case by presenting appellant's letter to his Congressman and the reply thereto; the name of the chaplain to whom he complained; the names of those guards who cursed at and taunted him; the name of the guard who referred to him as a "little bitch"; a written synopsis of appellant's conversation with the superintendent, Master Sergeant Callahan; documentary evidence of his attempts to speak to his first sergeant and commander; and interlocking affidavits from other prisoners attesting to the conditions at Dyess Air Force Base. Until such evidence is presented, appellant has neither stated a colorable claim warranting a DuBay hearing nor demonstrated an

attempt to exhaust his administrative remedies.  Accordingly, I

would affirm the findings of guilt and sentence in this case.